## LIABILITY FOR DOW-AIKIN TAX.

Superior Court of Cincinnati.

LOY SING v. CHAS. E. ROTH, TREASURER.

Decided, February 8, 1913.

*Taxation—Keeper of a Restaurant—Supplying His Customers With Beer Without Profit—Liable for the Dow-Aiken Tax—Sections 6071, et seq.*

The proprietor of a restaurant, who accepts orders from his customers for beer which he procures in a neighboring saloon, collecting from his customers therefor and paying the saloon keeper in due course, is liable for the Dow-Aiken liquor tax, notwithstanding there is no profit to him in such transactions.

*Kelley & Hauck*, for plaintiff.
*Charles A. Groom*, Assistant Prosecuting Attorney, contra.

OPPENHEIMER, J.

This is an action to enjoin the collection of a tax assessed against plaintiff under the so-called "Dow-Aiken law" (General Code Ohio, Section 6071 *et seq.*).

The facts, so far as they are essential to a determination of the case, are as follows: Plaintiff is the proprietor of a restaurant situated upon the second floor of a building located at 509 George street, in the city of Cincinnati. Upon the first floor of the building is a saloon owned and operated by Messrs. Dancer and Henderson. Entrance to the restaurant is obtained directly from the street, through a hallway which leads past the side entrance to the saloon. A "dumb waiter" runs from the restaurant to the saloon below.

The restaurant is kept open for business from about three o'clock in the afternoon until about four o'clock in the morning. Plaintiff furnishes to his patrons various Chinese dishes, and coffee, tea or beer. The testimony indicates that no beer is kept

upon the premises, but that whenever an order for beer is given to one of the waiters in the restaurant, the order is communicated to the bar-tender in the saloon below through the "dumb waiter" or by a messenger—usually the waiter who takes the order—and the beer is then either sent or brought up to the restaurant and served to the patron. Sometimes orders are taken for beer only, without edibles, and filled in the same manner. The patron is charged the same price for beer as plaintiff pays the saloonist therefor, and that amount is paid either when the beer is served, or when the patron is ready to depart; and at times "tips" or gratuities are given to the waiters for serving the beer only. According to plaintiff's testimony, about five out of every ten persons who visit the restaurant are served with beer in this manner.

The sole question in the case is whether these facts justify the inference that plaintiff in engaged in "trafficking in intoxicating liquor" within the meaning of General Code, Section 6071. Plaintiff contends that his acts are merely acts of hospitality, for the purpose, as he puts it, of "accommodating customers"; and that in performing such acts he is acting only as the agent of the customers in procuring the beer from the saloonists, or as the agent of the saloonists in serving the same. In other words, he contends that the sale is, in each case, a sale by the saloonists themselves, made directly to the customer through himself as agent.

If this restaurant were conducted by Dancer and Henderson in connection with their saloon, plaintiff's position would perhaps be tenable. Unfortunately for his position, however, he has absolutely no interest in the saloon, nor have the saloonists any interest in the restaurant. The proprietors of the saloon look to plaintiff individually for their pay for the liquor thus furnished him, and do not delegate him as their agent to collect from the customer, whom they do not know in the transaction. On the other hand, plaintiff usually collects the "beer money" from the customer as part of his entire bill, and pays to the saloonists, at any time thereafter, the amount due for beer furnished by them.

The code defines "trafficking in intoxicating liquor" as "the buying or procuring and selling" thereof, except under circumstances in which we are not now interested (General Code Ohio, Section 6065). The evidence seems clearly to bring plaintiff's acts within this definition, and his contention can not, in our opinion, be construed otherwise than as a subterfuge through which to escape payment of the tax.

The solution of the question presented for our consideration can not be made to depend upon the amount of profit realized by plaintiff (*University Club of Cincinnati* v. *Ratterman*, 3 C. C., 18). Nor can it depend upon the quantity purchased on each occasion (*Watson* v. *Biddle*, 12 C.C.[N.S.], 238). It must depend solely upon the facts presented, and these facts are, so far as possible, to be considered with a view to determining their real significance.

In the case at bar, the purchaser is dealing solely with the plaintiff. He knows no one else in the transaction. He cares not from what place the beer is obtained. The price is fixed by and paid to plaintiff. While no profit is perhaps made upon the liquor itself, yet it is but reasonable to assume that plaintiff deems it advisable to "accommodate" his customers in this manner and thus secure their patronage. He has paid the special tax required by the laws of the United States for engaging in the sale of intoxicating liquor, and this is by statute made *prima facie* evidence that he is engaged in the liquor traffic: General Code, Section 6092; *DeMonte* v. *Pabst*, 14 O. D. (N.P.), 97.

A traffic in intoxicating liquor may be carried on without maintaining a bar or keeping a stock of liquor constantly on hand (*Leonard* v. *Bowland*, 4 N.P[N.S.], 577). It is sufficient that the purpose and effect of the transaction in question are to transfer the property in a given quantity of liquor from one to another. It is perfectly manifest from the testimony in this case that if the customer were to refuse to pay for the liquor furnished him, plaintiff would be the only person who could seek to enforce payment. Plaintiff acquired title by purchase from Dancer and Henderson, who ceased, upon delivery

to him, to exercise any control over its disposition. He then delivered it to the customer from whom he collected the price. If plaintiff failed to pay the money thus collected to Dancer and Henderson, might he have been prosecuted for embezzlement? Then how can it be seriously contended that he was merely their agent?

If we were to hold otherwise, any person might evade the law by merely making an arrangement such as this with a near-by saloon. We are not disposed to assist in this manner in nullifying a law which the Legislature has seen fit to place upon the statute books of the state.

Plaintiff's counsel has endeavored to support his position by the citation of several cases. Unfortunately, however, the citations are entirely foreign to the real question at issue. They have to do either with dissimilar conditions, or with questions concerning the kind of property subject to distress and sale under Section 6077.

Let the temporary injunction be dissolved, and the petition be dismissed.